OPINION OF THE COURT
Kenneth L. Gartner, J.
The instant motion presents a unique issue of first impression involving a conflict between two legal principles: the *490 principle that unpublished memorandum decisions of a court are not to be given binding effect, and the principle that decisions of a court with direct appellate authority are to be given controlling (i.e., stare decisis) effect by a subordinate court.
Pursuant to Judiciary Law § 431, all decisions of the Court of Appeals and the four Appellate Divisions are officially published. The conflict presented by these principles is therefore unique to the New York State trial courts of limited jurisdiction (e.g., the Nassau and Suffolk County District Courts, the New York City Civil and Criminal Courts, the various City, Village, and Justice Courts, et al.). The Supreme Court, Appellate Term, reviews their decisions, but its decisions are published only selectively. Many decisions of this intermediate appellate tribunal therefore circulate in samizdat form only.
The issue is also unique because unpublished decisions may still be considered as persuasive authority. Persuasive authority is how decisions of other (even superior) trial courts, federal courts, or courts of other jurisdictions would be viewed in any event by New York State trial courts of limited jurisdiction. The fact of nonpublication does not materially alter the deference afforded them. It is only when, in the case of the Appellate Term, the decision is to be normatively given not just persuasive but binding effect, that the issue comes to a head.
In the instant case, the issue is presented by the plaintiff moving for reargument based almost entirely upon two unreported Appellate Term decisions which the plaintiff has now annexed to its moving papers.
Under the rule of stare decisis, “decisions by the Appellate Term must be followed by courts whose appeals lie to it.” (28 NY Jur 2d, Courts and Judges § 220, at 274 [1997].) However, “[generally, unpublished decisions or opinions have no precedential value other than the persuasiveness of their reasoning” (Binimow, Precedential Effect of Unpublished Opinions, 2000 ALR5th 17; see Dubai Islamic Bank v Citibank, 126 F Supp 2d 659, 669, n 14 [SD NY 2000] [applying New York law]). (Even under this principle, unpublished decisions would of course bind the parties themselves pursuant to the doctrines of law of the case, collateral estoppel, and res judicata.)
Two basic policy concerns have been advanced to support this principle. The first is that “an opinion that is not published is written primarily for the parties who are already knowledge *491 able of the facts of the particular case, and for this reason, most unpublished opinions do not contain a comprehensive analysis of the legal issues decided by the court.” (Binimow, at 17.) The second policy consideration supporting the application of this principle was expressed by Weaver, The Precedential Value of Unpublished Judicial Opinions (39 Mercer L Rev 477, 485-486 [1988]):
“To treat unpublished opinions as precedent would probably not promote the predictability and stability of the law. Rather, unpredictability and instability would seem to follow. If the average person, even through his attorney, does not have access to a decision, he certainly cannot take it into his account in ordering his affairs. The use as precedent of an unpublished opinion, to which even the average man with counsel does not have access, would make the law capricious and unpredictable. Thus, the policies behind the doctrine of stare decisis would support the conclusion that unpublished judicial opinions are not appropriate subjects of stare decisis.”
Further recognition of this latter policy concern is given in section 0.23 of the Rules Relating to the Organization of the Court, promulgated by the United States Court of Appeals for the Second Circuit. This rale prohibits the citation of unreported summary orders of that appellate court because, inter alia, such unreported memoranda “are not uniformly available to all parties.” (Decisions which are at least unofficially reported — by, e.g., Commerce Clearing House, the New York Law Journal, Westlaw, LEXIS, et ah — will be more widely available, often through searchable electronic data bases, and thus their exclusion from stare decisis would be supported by a weaker policy argument.)[1]
The policy concern expressed by the Second Circuit rule, as well as the Mercer Law Review article, appears in the instant case particularly apt. The plaintiff, by dint of its status as one of the most frequent collection plaintiffs in Nassau County, is *492 in a unique position of access to a multitude of decisions concerning it, and — whether volitionally or due to a faulty indexing system — has in the past presented to the court only those of the multitude which were resolved in its favor, and not those resolved against it. (See Yellow Book v O’Connor, NYLJ, Nov. 30, 2000, at 34, col 6 [Nassau Dist Ct] [unpublished Nassau County Supreme Court decision cited as precedent, with two conflicting unofficially reported Nassau County Supreme Court decisions ignored].) Hence, if an opinion has not been at least unofficially reported, this Court, at least in this particular situation, is at a disadvantage in assessing whether it represents an accurate and complete statement of the authoring court’s position.[2]
In weighing these policy concerns, some courts give stare decisis effect to unpublished decisions while others do not. (Compare, Nationwide Gen. Ins. Co. v Thomas, 1995 WL 158599, *3-4, 1995 Del Super LEXIS 129, *10-11 [Del Super, Feb. 27, 1995], with Matter of Shorter, 570 A2d 760, 771 [DC 1990]; see also, Weaver, supra, 39 Mercer L Rev at 489-490 [concluding that “(t)hose courts that regard unpublished opinions as (binding) precedents are not following the best rule”].)
Informed by these policy arguments, this Court proceeds, with caution, and with the rules of stare decisis to at the very least be strictly scrutinized, to the facts of the motion at bar.
The defendant, an $11,000 per year house cleaner residing in section 8 housing in the Suffolk County Town of Westhampton Beach, sought to have vacated the $3,000 default judgment entered against her by the plaintiff, a publisher of a Yellow Pages directory. The judgment was for an admittedly unpaid fee for advertising concededly published by the plaintiff on behalf of an entity known as The Rug Nurse.
*493 By prior decision, this Court deferred action on the defendant’s motion pending a hearing on three specified factual issues raised by the parties’ papers.
The plaintiff now moves for reargument, asserting that defendant’s motion should be denied without the necessity for a factual hearing. For the following reasons, the plaintiff’s motion for reargument is granted, but on reargument the prior determination is adhered to.
In the prior decision, this Court determined that one factual issue had been raised because the defendant has disputed the service alleged by the plaintiff’s process server. The process server attests that service was made upon an individual identified as the defendant’s daughter, Sue Dimilia. The defendant, however, asserts that “no one in my household was ever served a paper regarding this matter. The paper was served to a Sue Dimilia. There is no such person at that address.”
In the prior decision, this Court observed that, as held by the Appellate Division in Chase Manhattan Bank v Carlson (113 AD2d 734, 735 [2d Dept 1985]), if service were in fact improper, dismissal would be required whether or not a meritorious defense had been stated:
“Absent proper service of a summons, a default judgment is a nullity and once it is shown that proper service was not effected the judgment must be unconditionally vacated. The existence or lack of a meritorious defense is irrelevant to the question of whether a judgment should be vacated for lack of personal jurisdiction [citations omitted].” (Accord, Matter of Liberty Mut. Ins. Co. [Markovitch — Eagle Fuel Transp. — AIV Ins. Co.], 214 AD2d 734 [2d Dept 1995]; DeMartino v Rivera, 148 AD2d 568 [2d Dept 1989]; New York State Higher Educ. Servs. Corp. v Adams, 173 Misc 2d 283 [Sup Ct, Albany County 1997].)
The plaintiff, in its current papers, asserts without citing any authority that this determination was “improper” because an affidavit was filed by the plaintiff “which clearly indicates that the defendant was sufficiently served with process according to the mandates of the CPLR.” This contention is without merit. In fact, the instant facts are quite similar to those presented in OCI Mtge. Corp. v Omar (232 AD2d 462 [2d Dept 1996]). In OCI Mtge. Corp., the Appellate Division held (232 AD2d at 462-463):
“The Supreme Court erred in failing to hold a hearing on the issue of the propriety of personal service *494 upon the appellant since the appellant has raised an issue of fact with respect to the service of the summons and verified complaint. The burden of proving jurisdiction is upon the party asserting it and when challenged that party must sustain that burden by a preponderance of the credible evidence [citations omitted]. An affidavit of service is not conclusive once there is a sworn denial of receipt [citations omitted]. The appellant denies that the person upon whom process was served pursuant to CPLR 308 (2) was her cousin * * * Thus, factual issues have been raised which require a hearing to be held [citations omitted].”
Just as a hearing was required in OCI Mtge. Corp. where the defendant denied that process was served upon her cousin, a hearing is required in the instant case, where the defendant has denied that process was served upon her daughter.
Moreover, even if proper service was established, this Court in its prior decision identified another factual issue, i.e., whether the defendant has alleged a meritorious defense.
This Court determined (and the defendant agrees) that if (as the summons and complaint in this action indicate) The Rug Nurse is not a corporation but rather a d/b/a (doing business as) of the individual defendant, individual liability will lie and the defendant, having conceded that advertising charges were incurred by The Rug Nurse and have not been paid, would have no defense, since a sole proprietor bears unlimited liability for the venture’s undertakings. (Matter of Williams v Gleason, 1980 WL 102282 [Sup Ct, Albany County 1979]; Latham Sparrowbush Assocs. v Shaker Estates, 153 AD2d 788, 791 [3d Dept 1989].) However, this Court determined that if The Rug Nurse is in fact a corporate party, rather than a sole proprietorship, no liability would lie, since the single signature line utilized on the plaintiffs form contracts is ambiguous, and thus, in light of the mandate that form contracts be construed against the drafters, is insufficient to personally bind the individual signatory on behalf of a corporate party. (Yellow Book v O’Connor, supra, NYLJ, Nov. 30, 2000, at 34, col 6 [Nassau Dist Ct].) This is particularly the case on the instant facts where, as observed by the Supreme Court, Nassau County, in Yellow Book Co. v Williams (NYLJ, Sept. 26, 1994, at 31, col 2 [hereafter Williams]), the signatories are largely “unsophisticated, non-legal-trained individuals running small businesses.” (Accord, Yellow Book v Greene, NYLJ, Feb. 8, 1994, at 27, col 1 [Sup Ct, Nassau County] [O’Connell, JJ.) A factual issue is thus presented as to whether The Rug Nurse is indeed a sole proprietorship or some other form of entity.
*495 The plaintiff protests that O’Connor, Greene, and Williams are all contrary to a decision in Yellow Book Co. v Baum (case No. 2000-786, Dec. 22, 2000 [App Term, 2d Dept]). However, the Baum decision simply stated:
“A reading of the two page agreement involved herein reveals that it clearly and unambiguously made the defendant individually liable thereon. Under the circumstances, the defendant’s attempt to avoid personal responsibility was properly rejected [citations omitted].”
Baum is an unpublished summary decision which does not set forth the facts adjudicated even to the extent of revealing whether the contract at issue was the same as, or similar to, the contract at issue in the instant case. Neither does Baum reveal whether the specific grounds given for the O’Connor, Greene, and Williams decisions were presented. “The doctrine of stare decisis presupposes the existence of a well-defined precedent determinative of a point in question, and in the absence of such a precedent, the doctrine is inapplicable.” (28 NY Jur 2d, Courts and Judges § 207, at 258 [1997].) As held in Wellbilt Equip. Corp. v Fireman (275 AD2d 162, 168 [1st Dept 2000]), a case “is precedent only as to those questions presented, considered and squarely decided [citations omitted].” (Accord, Williams v AGK Communications, 143 Misc 2d 845, 848 [Sup Ct, Onondaga County 1989] [“(a) binding precedent is not created by a court’s decision unless the subject matter is clearly and squarely dealt with and the principle established is well defined”]; see also, Imling v Port Auth., 184 Misc 2d 893, 895 [Sup Ct, NY County 2000] [finding that where the particular legal argument at issue had not been raised in the prior case or addressed by the court, the prior case held no precedential value on the specific legal issue].)
Moreover, in Baum, the Appellate Term was unaware of the “smoking gun” concession which would later be made in Yellow Book v Davis (index No. 378/99, Feb. 26, 2001 [Nassau Dist Ct] [Fairgrieve, J.]). During the trial in Davis, counsel for the instant plaintiff was questioned as to why, in light of the persistent litigation engendered by the plaintiff’s anomalous attempt to have a single signature line perform the threefold function of (1) binding the principal to the agreement, (2) supporting the agency of the signatory, and (3) binding the agent as a guarantor of its principal’s obligation (see Savoy Record Co. v Cardinal Export Corp., 15 NY2d 1 [1964]), the plaintiff had not opted to amend the form to provide for at least two separate signature lines, one binding the principal and one *496 personally guaranteeing the obligation, so that clarity could be imposed and a frequent necessity for litigation obviated:
“the court: Could I ask you a question? When you made the amendment in 1995 was it considered to put in the two separate signature lines?
“counsel: Yes, and we opted not to do it and I’ll tell you exactly why.
“the court: Why?
“counsel: The reason why is from a commercial business practice. Sometimes when you ask a person to sign twice they refuse. We’re in the business of selling advertising.”
In Williams (supra), Nassau County Supreme Court stated (at 31, col 2):
“It would appear that the practice of the Plaintiff Yellow Book Co., Inc., to bind unsophisticated, nonlegal-trained individuals running small businesses to personal liability * * * may be a fraud on the business public.”
It is not necessary to agree with this formulation to nevertheless conclude, as did O’Connor, Williams and Greene, that the contract is sufficiently ambiguous to preclude the imposition of personal liability upon corporate officers. Since a different result would thus obtain if The Rug Nurse is a corporation as opposed to a sole proprietorship, this question must be addressed factually at a hearing in this matter.
Even if proper service were shown, and a meritorious defense found to be lacking, a third factual issue was identified in this Court’s prior decision. This Court found that there superficially did not appear to be any basis for this Court to exercise jurisdiction over the Westhampton Beach resident defendant pursuant to UDCA 404. The signing of a contract in Westhampton Beach did not “constitute the transaction of any business within a district of a court within [Nassau] County” within the meaning of that statute. (Marketing Showcase v Alberto-Culver Co., 445 F Supp 755, 759 [SD NY 1978].) While parties are permitted to nevertheless contractually agree on jurisdiction, the clause in the contract relied upon by the plaintiff makes no mention of consenting to jurisdiction in Nassau County. The clause simply provides that the contract is “deemed transacted in Nassau County.” The import of this indirect formulation may be clear to a lawyer or judge familiar with the legal rules governing the bases for establishing jurisdiction. A lay reader, however, would not necessarily know the legal significance of *497 the fiction to which he or she is being asked to give assent. This indirect formulation is therefore insufficient to confer jurisdiction when utilized in a form contract in a transaction with many of the indicia of “consumer transactions.” (See Yellow Book v Abbott, NYLJ, Oct. 30, 2000, at 33, col 5 [Nassau Dist Ct].) A factual issue is raised as to whether there are additional grounds to support jurisdiction.
The plaintiff asserts that the Abbott decision is contrary to yet another unpublished decision of the Appellate Term, Second Department, Yellow Book Co. v Anderson (index No. 96-1025 N C, June 4, 1997). In that case, the Appellate Term reversed a decision of the District Court, Nassau County (Madden, J.), on the ground that the allegation in the complaint in that action (which referred to the same clause which is at issue in the instant case), “was sufficient to establish the basis for personal jurisdiction over defendant.” However, it is once again not clear that the specific legal grounds upon which the Abbott decision was based were ever considered or ruled upon by the Appellate Term in Anderson. Anderson can therefore not be considered precedent as to these entirely different issues. (Wellbilt Equip. Corp. v Fireman, supra, 275 AD2d at 168.)
A hearing must therefore be held as directed in this Court’s prior decision.

. The rule that unpublished decisions are not to be given stare decisis effect must be distinguished from the rule instituted by some jurisdictions, such as the Second Circuit, prohibiting the citation of unpublished decisions at all. While motivated by similar policy concerns, some commentators have expressed the belief that these no-citation rules are unconstitutional. (See Katsh and Chachkes, Examining the Constitutionality of No-Citation Rules, NYLJ, Apr. 2, 2001, at 1, col 1.) Such a blanket no-citation rule would in any event be unworkable and unfair if applied to New York State trial courts and the Appellate Term: in the Second Circuit, all decisions are uniformly reported unless deliberately withheld. In these New York courts, such is not the case. The fact of nonreportage is not necessarily a volitional choice.

. Code of Professional Responsibility DR 7-106 (b) (22 NYCRR 1200.37) requires a lawyer to cite “controlling legal authority * * * directly adverse to the position of the client.” This has been extremely narrowly construed. (See Simon, New York Code of Professional Responsibility Annotated, at 562 [2001 ed].) (Ironically, denying stare decisis effect to unpublished Appellate Term decisions would bring them outside the ambit of this limited rule.) However, the Appellate Division, Second Department, apparently imposes upon counsel a broader “affirmative obligation to advise the court of authorities adverse to his position.” (Matter of La Cucina Mary Ann v State Liq. Auth., 150 AD2d 450, 451 [2d Dept 1989]; Matter of Cicio v City of New York, 98 AD2d 38, 40 [2d Dept 1983].) In People v Whelan (165 AD2d 313, 324, n 3 [2d Dept], lv denied 78 NY2d 927 [1991]), this principle was applied to an attorney’s failure to cite to the Appellate Division a decision by Nassau County Court, an inferior, and therefore not “controlling,” trial level court.