OPINION OF THE COURT
Barbara Jaffe, J.
In the course of denying defendant’s speedy trial motion and rejecting his contention that a criminal court information alleging the possession of a gravity knife must set forth an evidentiary basis for the deponent police officer’s conclusion that a weapon constitutes a gravity knife, this court agreed with a decision of the Appellate Term, Second Department, but did not deem itself bound by it. On March 26, 2003, in an oral ruling from the bench, the court denied defendant’s motion for the following reasons.
I. Procedural Background
On June 20, 2002, defendant was arraigned on an information charging him with one count each of obstruction of governmental administration in the second degree (Penal Law § 195.05), criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [1]), reckless driving (Vehicle and Traffic Law § 1212), and disorderly conduct (Penal Law § 240.20 [7]). In the information, the deponent police officer alleged, inter alia, that he had recovered from defendant “a gravity knife (locks open when flipped).” On September 17, 2002, this court denied defendant’s motion to dismiss the weapon count, finding that the information was facially sufficient. On December 11, 2002, the court granted the People’s motion to dismiss the weapon count as the assistant district attorney had examined defendant’s knife and discovered that it was not a gravity knife. On February 13, 2003, defendant filed and served the instant motion to dismiss the remaining charges pursuant to Criminal Procedure Law § 30.30 (1) (d) and § 170.30 (1) (e) on the ground that he was denied his right to a speedy trial.
*835 II. Contentions
Defendant claims that his motion to dismiss the weapon count for facial insufficiency was erroneously denied and that, therefore, a defective accusatory instrument was pending from July 16, 2002, when a motion schedule was set, to December 11, 2002, when the charge was dismissed. Specifically, he asserts that the allegations in support of the weapon count were fatally conclusory, in violation of the requirements set forth in People v Dumas (68 NY2d 729 [1986]). He also contends that this court is not bound by a prior decision finding the information facially sufficient, or by a decision rendered by the Appellate Term, Second Department, which affirmed the denial of a motion to dismiss an almost identical information (People v William, 191 Misc 2d 293 [App Term, 2d Dept 2002], lv denied 98 NY2d 682 [2002]). Given the insufficiency of the factual allegations, defendant concludes that, through no fault of the defense, the People could not, as a matter of law, have been ready for trial and that the case has pended well beyond the statutory limit of 90 days within which the People must be ready for trial on a misdemeanor. He also takes issue with the calendar court’s ruling that an adjournment was excludable due to exceptional circumstances.
The People maintain that the complaint was facially sufficient as it contained the allegation that the knife recovered from defendant “opens and locks when flipped,” which is all that need be alleged. They also observe that in Dumas, the Court of Appeals set a higher standard for assessing the facial sufficiency of informations charging drug offenses, due to the difficulty in identifying a drug from its appearance alone. Even assuming that the charge should have been dismissed, however, the People urge that dismissal of the entire instrument would have been inappropriate. Rather, they claim that had they been given an opportunity to file a superseding information, they would only have been charged for the time that elapsed from October 29, the date set for a suppression hearing ordered by the court, to December 11, when the weapon count was dismissed, and that such delay, when added to the other chargeable time, is well within the statutory limit. Alternatively, the People assert that they were entitled to rely on the court’s ruling that the instrument was an information. They also maintain that they were entitled to rely on a prior ruling excluding a period of delay due to exceptional circumstances.
*836 III. Conclusions of Law
A. Facial Sufficiency
1. Is this court bound, by William, a decision rendered by the Appellate Term, Second Department?
In its decision denying defendant’s motion to dismiss, this court held that the information alleging that defendant possessed a “gravity knife (which opens and locks open when flipped)” was facially sufficient.* Absent a decision on point of the Court of Appeals, the Appellate Division, First Department, or the Appellate Term, First Department (NY Const, art VI, § 8 [d] [according appellate jurisdiction over local criminal court to Appellate Term]; CPL 450.60 [4] [same]), this court considered whether it is bound by a decision rendered by the Appellate Term, Second Department, which affirmed the denial of a motion to dismiss an information containing the sole allegation that the defendant possessed a gravity knife. In considering the binding effect of such a decision, it was necessary to examine the doctrine of stare decisis.
The provision that embodies the common-law rule of stare decisis as applicable to the courts of New York State provides as follows: “The binding force of a judicial construction of a statute depends upon the court by which it was rendered and the rank of the tribunal in the judicial hierarchy. Thus the decisions of the Court of Appeals are binding upon the Appellate Division; those of the Appellate Division on the Supreme Court; and so on down from the superior to the inferior judicatories.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 72 [b], Comment.) Further, “a decision of an appellate term of one judicial department is not binding on the supreme court in another department which has decided to the contrary.” (Id.)
In Mountain View Coach Lines v Storms (102 AD2d 663, 664 [2d Dept 1984]), the Appellate Division, Second Department, interpreted the rule of stare decisis as requiring that trial courts within the Second Department follow precedents set by the Appellate Division of another department until the Court of Appeals or the Appellate Division, Second Department, *837 pronounces a contrary rule. The Court observed that such a requirement constituted a “general principal of appellate procedure * * * necessary to maintain uniformity and consistency” and was, moreover, justified by the status of the Appellate Division as a “single State-wide court divided into departments for administrative convenience.” (Id. at 664.)
Although the Court in Mountain View did not cite Statutes § 72 (b), its holding seems to be supported by it, as the statute generally requires that the decisions of higher courts are binding on lower courts, without any apparent regard to their location within the state. Moreover, the last quoted provision of the statute, which restricts the doctrine as it relates to the Appellate Term, would be meaningless if the statute were not construed as comporting with Mountain View. Still, there are several reasons why the doctrine set forth in Mountain View ought not be applied to decisions emanating from the Appellate Term, especially in light of the statute’s great breadth and imprecision, and in the absence of clear authority for according precedential authority over this court to an Appellate Term of another judicial department. Thus, a closer examination of the issue is in order.
Part of the rationale underlying the dicta in Mountain View was the status of the Appellate Division as a court of statewide jurisdiction (102 AD2d at 664). The Appellate Term, by contrast, is a court of local jurisdiction. (NY Const, art VI, § 8 [a].) The Appellate Division is a court of record (id. § 1 [b] [courts of record are the Court of Appeals, Supreme Court, including Appellate Divisions thereof, Court of Claims, County Court, Surrogate’s Court, Family Courts, courts of civil and criminal jurisdiction of New York City, “and such other courts as the legislature may determine”]); the Appellate Term is not. The Appellate Division was created by the Legislature (id. § 4); the Appellate Term was established by and serves at the pleasure of the Appellate Division of the Supreme Court of the department in which it sits (id. § 8 [a], [b]). The decisions of the Appellate Division are regularly reported; the decisions of the Appellate Term are not (Judiciary Law § 431 [requiring Law Reporting Bureau to report every case determined in Court of Appeals and Appellate Divisions of Supreme Court, and any cause determined in any other court which State Reporter, with approval of Court of Appeals, considers worthy because of its usefulness as precedent or its importance as matter of public interest]). A concurrence of three justices is necessary to a decision of the Appellate Division (NY Const, *838 art VI, § 4 [b]); a concurrence of only two judges is necessary to a decision rendered by the Appellate Term (id. § 8 [c]).
As these are significant distinctions, it is difficult to understand why appellate authority beyond its own jurisdiction would be accorded to the Appellate Term.
Moreover, Mountain View has not been adopted by the Appellate Division, First Department. While Justice Ernst Rosenberger cited it in the decision he alone rendered in People v Shakur (215 AD2d 184, 185 [1st Dept 1995]), the full bench filed a decision the same day disagreeing with him (People v Shakur, 215 AD2d 184 [1st Dept 1995] [Ellerin, J.P., Rubin, Ross, Nardelli and Tom, JJ.] [mem]). Justice Rosenberger also cited Mountain View in a concurring decision which was not joined by any other judge in that case. (People v Anderson, 151 AD2d 335, 338 [1st Dept 1989] [Rosenberger, J., concurring].)
On the other hand, the Appellate Term, First Department, relied on Mountain View in holding that the Criminal Court had followed the “correct procedural course” in deeming itself bound by a decision of the Appellate Division, Fourth Department. (People v Brisotti, 169 Misc 2d 672, 673 [App Term, 1st Dept 1996] [per curiam], lv denied 89 NY2d 940 [1997]; see also People v Brown, 185 Misc 2d 326, 337 [Crim Ct, Bronx County 2000] [relying on Shakur in deeming itself bound by decision rendered by Appellate Division, Second Department]; cf. People v Salzarulo, 168 Misc 2d 408, 411 [Sup Ct, NY County 1996] [court declined to be bound by decision rendered by Appellate Division, Fourth Department, despite Mountain View]; People v Waterman, 122 Misc 2d 489, 495 n 2 [Crim Ct, NY County 1984] [court declined to be bound by decision rendered by Appellate Division, Second Department; disapproved in Mountain View].) Brisotti, however, does not address the narrower issue of whether this court is bound by a decision of the Appellate Term outside the First Judicial Department.
Research reveals only two officially reported decisions which rely on Mountain View for the proposition that the New York City Criminal Court in the First Judicial Department is bound by a decision rendered by an Appellate Term outside this department. Those decisions, each rendered by the same judge, and of a court of jurisdiction concurrent with this court’s, do not address the issue beyond citing Mountain View, Shakur, and two Second Department decisions (Stewart v Volkswagen of Am., 181 AD2d 4, 7 [2d Dept 1992], revd on other grounds *839 81 NY2d 203 [1993]; People v Graham, 177 Misc 2d 542 [App Term, 2d Dept 1998], affd 93 NY2d 934 [1999]; People v Gonzalez, 181 Misc 2d 105, 111-112 [Crim Ct, NY County 1998]; People v Sanchez, 178 Misc 2d 695, 701 [Crim Ct, NY County 1998]).
Thus, while the goals of uniformity and consistency are rightly valued in our justice system, in light of the provisional status of the Appellate Term, the irregular reporting of its decisions, the requirement that only two justices concur in its decisions, and the absence of clear authority according to its precedential authority as set forth in Mountain View, there is insufficient justification for this court to deem itself bound by a decision of the Appellate Term of another judicial department, even if only to the extent that it does not conflict with the law as stated by the courts that directly bind it.
For all of these reasons, the court finds that William (191 Misc 2d 293 [2002]) does not bind it. Nonetheless, William is entitled to great deference. (Waterman, 122 Misc 2d 489, 495 [1984].)
In light of the foregoing, one may even ask how this court can be bound by an unpublished decision of the Appellate Term, First Department. (See Yellow Book of NY v Dimilia, 188 Misc 2d 489, 490 [Dist Ct, Nassau County 2001] [questioning precedential value of unpublished decisions].) That issue, although not presented here, is significant given the Appellate Term’s exclusive intermediate appellate jurisdiction over criminal appeals from this court. However, given the high volume of cases handled in the local criminal court, and relatively low number of appeals taken, there may be little cause for concern. Over the last three years, an average of 183 cases were annually appealed from this court to the Appellate Term, First Department, and of those, only 25 to 30% were perfected. Of the approximately 550 appeals over the three-year period, only seven reached the Court of Appeals. (Andrew LaBosco, Court Clerk-in-Charge, Appeals Bur Citywide, Apr. 23, 2003.)
2. Do the requirements set forth in Dumas apply to an instrument alleging the possession of a gravity knife?
Although the court does not deem itself bound by William, it must still be determined whether an information alleging the possession of a gravity knife must include the factual basis for the deponent’s conclusion that the weapon constitutes a gravity knife. In Dumas (68 NY2d 729 [1986]), the Court of Appeals held that in order for an accusatory instrument to suf *840 ficiently allege a marijuana offense, evidentiary facts must be pleaded that show the basis for the conclusion that a substance consisted of marijuana. A field or laboratory test, an officer’s expertise in identifying marijuana, or a defendant’s admission may provide the requisite corroboration. (Id. at 731.)
In William (191 Mise 2d 293 [2002]), the Appellate Term, Second Department, upheld the denial of a motion to dismiss an information containing the sole allegation that an arresting officer recovered a gravity knife from the defendant’s pants pocket (see People v William, 188 Misc 2d 869, 870 [Crim Ct, Kings County 2001]). The lower court rejected the defendant’s contention that Dumas required a dismissal, observing that its rationale had never been applied to an accusatory instrument alleging the possession of a gravity knife. (188 Misc 2d at 871.) It also noted that a gravity knife is identifiable “by its appearance alone,” and that, therefore, it “is clearly distinguishable from marihuana or other controlled substances where the items actually must be tested despite its appearance in order to confirm its identity.” (Id. at 872.) In affirming, the Appellate Term held that an information need not contain language that a gravity knife fulfills the statutory definition or even that it is operational. “Although proof of same may be required for conviction, it is not necessary to satisfy the jurisdictional requirements of an information.” (191 Misc 2d 293, 294 [2002] [citations omitted].)
People v Perez (123 AD2d 889 [2d Dept 1986], lv denied 69 NY2d 831 [1987]) is not to the contrary. There, the defendant’s conviction was reversed upon the People’s concession that they had failed to establish the operability of a purported gravity knife at trial. As the People conceded the issue, it was not likely fully litigated and, thus, Perez is of questionable precedential value. (See People v Bourne, 139 AD2d 210, 216 [1st Dept 1988], lv denied 72 NY2d 955 [1988] [“A case, therefore, is precedent only as to those questions presented, considered and squarely decided”].) The lower court in William, moreover, distinguished Perez with respect to its procedural posture (188 Misc 2d at 872), and the Appellate Term, for good reason, apparently concurred.
Here, the officer’s error was not discovered until after the court had rendered its decision on facial sufficiency, and in deciding facial sufficiency, the court may consider only those factual allegations contained within the four corners of the instrument and any supporting depositions (see People v Alejandro, 70 NY2d 133 [1987]). Thus, the officer’s error in *841 misidentifying the object as a gravity knife is in the nature of a latent defect which, like matters of credibility, must await trial. (See Matter of Edward B., 80 NY2d 458, 461, 463 [1992].) Consequently, the information was facially sufficient when the court rendered its decision despite the subsequent discovery that the object was not a gravity knife.
Nonetheless, this court agrees with defendant’s assertion that the mere design of a gravity knife does not ensure its function as a weapon, and recognizes that there are pitfalls to conclusory pleadings where, as here, a police officer errs in identifying an object as a particular weapon. That error, had it not been for its revelation by the assistant district attorney, could have resulted in the continued and wrongful prosecution of defendant for that offense. Still, it is the purpose of a trial to reveal errors such as the one made in this case, where defendant advances no claim of police or prosecutorial misconduct. (Compare People v Flores, 189 Misc 2d 665, 667 [Crim Ct, Queens County 2001] [complaining witness’ admission at trial that she was unable to read complaint or her own supporting deposition does not annul information absent prosecutorial bad faith], with People v Kenrick, 162 Misc 2d 75, 78 [Crim Ct, NY County 1994] [where differing signatures on undercover officer’s supporting depositions suggested police misconduct, court held hearing].)
For all of these reasons, even if not bound by William, this court agrees with it. To the extent that defendant has asked the court to reconsider its earlier decision denying his motion to dismiss for facial insufficiency, that application is denied.
B. Speedy Trial
With regard to the remainder of defendant’s motion, the court makes the following factual findings and conclusions of law:
June 20, 2002 to July 16, 2002 (excluded):
On June 20, defendant was arraigned on the misdemeanor complaint which was deemed an information. The case was adjourned to July 16 for defendant to retain private counsel.
Defendant correctly concedes that the People should not be charged with this period of delay. (CPL 30.30 [4] [f].)
July 16, 2002 to September 17, 2002 (excluded):
On July 16, the Legal Aid Society was appointed to represent defendant. The case was adjourned for motion practice.
Defendant’s contention that the weapon count was facially insufficient is rejected. {See III.A, supra.) However, even if the *842 count was facially insufficient, “neither the terms of CPL 30.30 nor its interpretative case law imposes any requirement upon the prosecution to obtain an accusatory instrument sufficient for trial before claiming the exclusion of delays occasioned by adjournments requested or consented to by the defendant.” (People v Brooks, 190 Misc 2d 247, 249 [App Term, 1st Dept 2001], citing People v Worley, 66 NY2d 523, 525 [1985]; but cf. People v Peluso, 192 Misc 2d 33 [Crim Ct, Kings County 2002] [People may not be ready for trial on partially converted accusatory instrument].)
As this court is bound by Brooks, this period of delay is excludable. (CPL 30.30 [4] [b].) Given this result, the court need not address the People’s other assertions.
September 17, 2002 to October 29, 2002 (excluded):
On September 17, the court decided defendant’s omnibus motion and adjourned the case to October 29 for a Mapp! Dunaway hearing.
This period is excludable. (See People v Ailes, 268 AD2d 370 [1st Dept 2000], lv denied 94 NY2d 901 [2000]; People v Green, 90 AD2d 705 [1st Dept 1982], lv denied 58 NY2d 784 [1982].)
October 29, 2002 to December 11, 2002 (eight days included):
On October 29, the People were not ready for trial. On November 6, the People filed and served a certificate of readiness.
Only eight days of this adjournment are charged to the People. (See People v Stirrup, 91 NY2d 434, 440 [1998] [once People file and serve certificate of readiness, speedy trial time is tolled].)
December 11, 2002 to January 29, 2003 (excluded):
On December 11, the court granted the People’s motion to dismiss the weapon count and it was agreed that a suppression hearing was no longer necessary. Additionally, the People informed the court that the arresting officer was unavailable for medical reasons, and defense counsel declined to be heard on that matter. The court granted the People’s request for an adjournment due to exceptional circumstances (CPL 30.30 [4] [g]), and instructed the People to file a certificate of readiness upon the officer’s availability. On December 31, the People filed and served a certificate of readiness.
Defendant asserts that this period of delay is includable, and that this court is not bound by the decision of the calendar judge finding the delay excludable. The People maintain that the period is excludable pursuant to Criminal Procedure Law *843 § 30.30 (4) (g), as a police officer witness was unavailable due to medical reasons. Additionally, even if the adjournment was not due to exceptional circumstances within the meaning of the statute, the People observe that they would have only been chargeable with 20 days, from December 11 to December 31, when they filed and served the certificate of readiness.
Although the People’s conclusory assertion that the officer was medically unavailable is ordinarily insufficient to justify excluding this period without at least documentary verification (see People v Marshall, 91 AD2d 900, 901 [1st Dept 1983] [as long as material witness’ unavailability for medical reasons can be verified, that period of time should be excludable as an exceptional circumstance]), defendant declined to object to the calendar court’s determination that the delay would be excluded due to exceptional circumstances. Consequently, the delay is excluded. (CPL 30.30 [4] [g]; see People v Robinson, 171 AD2d 475 [1st Dept 1991], lv denied 78 NY2d 973 [1991] [hearing court erroneously ignored calendar judges’ rulings on which People were entitled to rely]; People v Wilson, 119 AD2d 843 [2d Dept 1986] [hearing court erroneously reconsidered decision of judge who excluded adjournment as People entitled to rely on judge’s representation that time would be excluded; as defendant failed to object to prior ruling, Appellate Division reinstated indictment]; cf. People v Berkowitz, 50 NY2d 333, 349 [1980] [calendar notations entered by court officer presumably at direction of presiding judge do not comprise binding determination as to whether delay to be excluded].)
On January 29, 2003, the People answered ready and defense counsel requested an adjournment to file the instant motion.
For all of these reasons, only eight days of includable time have elapsed since the commencement of the instant case, well within the statutory limit of 90 days. (CPL 30.30 [1] [b].)
IV. Conclusion
Accordingly, defendant’s motion to dismiss is denied. (CPL 170.45, 210.45 [5] [c].)

 Here, the deponent officer’s addition of the parenthetical comment “which opens and locks open when flipped” falls short of establishing that he tested the knife.
As both parties erroneously contend that another judge denied the motion, this court need not address defendant’s argument concerning the binding impact of a ruling rendered in the course of a single case by a different judge.