OPINION OF THE COURT
William I. Mogulescu, J.
The defendant stands charged with one count of criminal trespass in the second degree (Penal Law § 140.15), one count of criminal trespass in the third degree (Penal Law § 140.10 [a]) and one count of trespass (Penal Law § 140.05) by way of a misdemeanor complaint.
The defendant moves to dismiss the complaint, asserting that it has never been converted into an information because it is facially insufficient.
In order to be facially sufficient, the factual portion of a misdemeanor information must allege facts of an evidentiary character supporting or tending to support the charges. (See CPL 100.15 [3]; 100.40 [1] [b], [c]; People v Casey, 95 NY2d 354, 360 [2000]; People v Dumas, 68 NY2d 729, 731 [1986].) In addition, the allegations of the factual part, together with any supporting depositions, must provide reasonable cause to believe that the defendant committed the offense charged. (See CPL 100.40 [1] [b].) Finally, nonhearsay allegations must establish, if true, a prima facie case, that is, the allegations must show every element of the offense charged and the defendant’s commission of it. (See CPL 100.40 [1] [c]; People v Alejandro, 70 NY2d 133, 139 [1987]; People v Hall, 48 NY2d 927 [1979]; People v Case, 42 NY2d 98 [1977].)
Paramount in defendant’s argument is that the factual portion of the misdemeanor complaint contains hearsay not “cured” by a supporting deposition. (See motion to dismiss at 4-7.)
In this case, the factual part of the complaint reads:
*734 “Deponent states that, at the above time and place, a Clean Halls Apartment Building, deponent observed the defendant exit the lobby of said location. Deponent further observed said dwelling to have a conspicuously posted NO TRESPASSING sign indicating that only tenants and their guests were allowed on said premises.
“Deponent further states that defendant’s residence address is 683 East 140 Street.
“Deponent further states that the defendant stated, in sum and substance: I WAS VISITING THE FIFTH FLOOR. I DON’T KNOW WHAT APARTMENT. Deponent further states that he went with defendant to the fifth floor of said location, and defendant pointed to Apartment 5B, indicating that he had just visited said apartment. Deponent further states Apartment 5B was occupied, and deponent could not locate anyone in the apartment who could verify defendant’s claim.
“Deponent further states that he has reviewed a notarized Clean Halls Affidavit signed by MARY C. RAMIREZ, the superintendent of said locationf,] and that said Clean Halls Affidavit authorizes the New York City Police Department to arrest individuals that are not tenants of the location or invitees. “Deponent further states that he is a New York City Police Officer and that based on the aforementioned information the defendant did not have permission or authority to enter or remain inside the above location, a dwelling.”
The defendant contends that hearsay is contained in the statement, “Deponent further states Apartment 5B was occupied, and deponent could not locate anyone in the apartment who could verify defendant’s claim.”
Hearsay, simply put, is an out of court statement offered for the truth of the matter asserted. (See generally People v Buie, 86 NY2d 501 [1995].) Hearsay is inadmissible unless one or more of several exceptions exist, none of which are present here.
CPL 100.40 (1) (c) requires that “[n]on-hearsay allegations of the factual part of the information and/or of any supporting depositions establish, if true, every element of the offense charged and the defendant’s commission thereof.”
One element common to all trespass counts charged in this complaint is that the defendant be shown to “enter or remain *735 unlawfully” in or upon the type of property particular to the charge. This element is defined in Penal Law § 140.00 (5): “A person ‘enters or remains unlawfully’ in or upon premises when he is not licensed or privileged to do so.”
In the instant complaint, the People attempt to establish this element by the defendant’s own admission that he does not live at the subject premises together with the fact that no one in the apartment he claimed to have visited was able to verify his claim.
That defendant is not licensed or privileged to enter or remain as a tenant of the building is sufficiently established by his own admissions. To fulfill the element, however, the People must also establish through nonhearsay evidence that the defendant is not upon the premises as a guest of a tenant. The assertion “[d]eponent further states Apartment 5B was occupied, and deponent could not locate anyone in the apartment who could verify defendant’s claim,” although craftily constructed, does not establish this required element.
The People seemingly rely on the conduct of the occupants (in their stated inability to verify defendant’s claim) as expressed to the deponent to establish that defendant’s claim of license as a guest was false. Whether verbal or nonverbal, the expression of the occupants was a statement. A “statement” is “not only an oral or written expression but also non-verbal conduct of a person intended by him as a substitute for words in expressing the matter stated.” (See People v Caviness, 38 NY2d 227, 230 [1975], quoting Uniform Rules of Evid rule 63, Comment; see also People v Carpenter, 52 AD3d 1050 [3d Dept 2008] [verbal or nonverbal conduct that asserts a fact may constitute hearsay].)
The deponent’s statement that the occupant could not “verify” defendant’s claim is hearsay. The conclusion that this statement is hearsay is supported by an analysis of how this statement would be dealt with in the context of a trial. At trial, the officer would testify to stopping the defendant as the defendant left the lobby. The officer questioned the defendant who stated, “I was visiting the fifth floor. I don’t know what apartment.” The officer would then testify that he took the defendant to the fifth floor where the defendant pointed to apartment 5B. The testimony would continue relating that the officer knocked on the door which was answered by the occupant or occupants who were asked: “Do you know the defendant?” An objection to the occupant or occupants’ response would obviously have to be sustained. The response is classic hearsay and *736 comes under none of the recognized exceptions to the hearsay rule.
This hearsay in the complaint must be “cured” by a supporting deposition and this has not been done. Accordingly, the misdemeanor complaint has not been converted to an accusatory instrument upon which an individual may be prosecuted.
Justices of this court have dismissed similarly drafted complaints. (See People v Boone, Sup Ct, Bronx County, May 9, 2008, Webber, J, index No. 11527C/2006 [holding that hearsay was imbedded in a similarly phrased complaint and required a supporting deposition]; see also People v Ikram, Sup Ct, Bronx County, Dec. 5, 2007, Fabrizio, J., index No. 30472C/07 [holding, in a similarly worded complaint, that the absence of a supporting deposition from the occupant of the apartment with whom the arresting officer spoke meant that the complaint contained “an essential fact of an evidentiary nature tending to prove an element of the crime which is still in hearsay form”].)
The People assert that the Appellate Term’s decision in People v Maresca (19 Misc 3d 133[A], 2008 NY Slip Op 50663[U] [App Term, 1st Dept 2008]) is binding on this court. Although Maresca upholds the facial sufficiency of a similarly phrased misdemeanor complaint, this court declines to follow it.
The Appellate Term in Maresca never even addressed the issue of whether the occupant’s failure to identify the defendant constituted hearsay which was then used to establish an essential element of the crime charged. This use of hearsay to establish the defendant’s lack of permission to be in the building violates the Court of Appeals teaching in People v Alejandro, and People v Case, that each essential element of a crime charged in an information be established by nonhearsay allegations.
Furthermore, contrary to the People’s position, for the reasons set out below, the Appellate Term’s decision in Maresca is not binding on this court.
New York Constitution, article VI, § 8 establishes the authority of the Appellate Division and Appellate Term, specifically reserving review of the cases decided by the Supreme Court to the Appellate Division only:
“If so directed by the appellate division of the supreme court establishing an appellate term, an appellate term shall have jurisdiction to hear and determine appeals now or hereafter authorized by *737 law to be taken to the supreme court or to the appellate division other than appeals from the supreme court, a surrogate’s court, the family court or appeals in criminal cases prosecuted by indictment or by information as provided in section six of article one.” (NY Const, art VI, § 8 [d] [emphasis added].)
In its own Rules of Practice, the Appellate Term has limited itself, in terms of jurisdiction, to cases from criminal court and civil court. (See Rules of App Term, 1st Dept [22 NYCRR] § 640.1 [“Jurisdiction”].)
The reason that decisions of the Supreme Court are appealed to the Appellate Division and not the Appellate Term is that the judges comprising the tribunal of the Appellate Term are, in fact, Justices of the Supreme Court and there is well-founded judicial policy barring conflicting rulings by courts of coordinate jurisdiction. (See Mears v Chrysler Fin. Corp., 243 AD2d 270, 272 [1st Dept 1997] [“Appellate Term has no power to review a Supreme Court ruling”]; see also George W. Collins, Inc. v Olsker-McLain Indus., 22 AD2d 485, 488-489 [4th Dept 1965] [“It is well established that a judge may not overrule the decision of another judge of co-ordinate jurisdiction made in the same case”]; see also 29 Holding Corp. v Diaz, 3 Misc 3d 808, 816 [Sup Ct, Bronx County 2004] [holding, “(t)his court is not bound by the precedents of the Appellate Term, either in this department or in other departments”]; cf. People v Arez, 64 Misc 2d 723 [App Term, 1st Dept 1970], affd 28 NY2d 764 [1971], appeal dismissed sub nom. Haynes v New York, 404 US 804 [1971] [sanctioning judicial review by Appellate Term of Supreme Court Justice when, pursuant to former Mental Hygiene Law statute, Justice’s role was the certification of an addict by trial and statute called for matter to be deemed a decision of criminal court].)
While it is true that Justices of the Appellate Division are also Supreme Court Justices, special designation of these Justices is provided for in the New York State Constitution. For instance, Justices of the Appellate Division may only be appointed by the Governor of New York State. (See NY Const, art VI, § 4 [c], [d].) Moreover, a Justice appointed to the Appellate Division is further distinguished from a nisi prius Justice of the Supreme Court in that, while sitting in a term of the Appellate Division, he or she may not exercise any of the powers of a Justice of the Supreme Court. (See NY Const, art VI, § 4 [j].) By contrast, a Justice of the Supreme Court appointed to the Ap *738 pellate Term is appointed by the Chief Administrator of the Courts, subject to the approval of the Presiding Judge of the Appellate Division, and keeps a Supreme Court calendar in addition to his or her duties in the Appellate Term. The Appellate Term Justice receives no special constitutional designation and, as mentioned above, is specifically prohibited by the Constitution from hearing appeals from the Supreme Court. (See NY Const, art VI, § 8 [d].)
There are significant differences between the Appellate Division and the Appellate Term. As recognized in People v Pestana (195 Misc 2d 833 [Crim Ct, NY County 2003]), a comprehensive decision contrasting the Appellate Division with the Appellate Term,
“the Appellate Division [is] a court of statewide jurisdiction. The Appellate Term, by contrast, is a court of local jurisdiction. (NY Const, art VI, § 8 [a] .) The Appellate Division is a court of record (id. § 1 [b] . . .); the Appellate Term is not. The Appellate Division was created by the Legislature (id. § 4); the Appellate Term was established by and serves at the pleasure of the Appellate Division of the Supreme Court of the department in which it sits (id. § 8 [a], [b]). The decisions of the Appellate Division are regularly reported; the decisions of the Appellate Term are not (Judiciary Law § 431 . . . ). A concurrence of three justices is necessary to a decision of the Appellate Division (NY Const, art VI, § 4 [b] ); a concurrence of only two judges is necessary to a decision rendered by the Appellate Term (id. § 8 [c]).” (Pestana, 195 Misc 2d at 837-838 [citations omitted].)
The Supreme Court’s decision in People v Maresca (docket No. 62804C-2005), which the Appellate Term reversed, is a Supreme Court matter. The Appellate Term shares coordinate jurisdiction with the Supreme Court and may not review a decision from a Supreme Court Justice. Mears v Chrysler Fin. Corp. began as an action in the Civil Court of New York City. The court’s denial of a motion to dismiss the complaint was appealed to the Appellate Term which reversed and dismissed the complaint. While the matter was pending before the Appellate Term, the complaint was amended to increase the amount of money sought by the plaintiff and the matter was removed to the Supreme Court. The Appellate Division, in reversing the order of the Appellate Term dismissing the complaint, held that *739 “Appellate Term has no power to review a Supreme Court ruling.” (243 AD2d at 272.) The order of removal of the Supreme Court “by implication, recognizes the merits of plaintiffs case” and therefore, “[t]he practical effect of Appellate Term’s dismissal of the action is to vacate the removal order” issued by a Justice of the Supreme Court. (Id. at 272.)
The opinions of the Appellate Term are not binding on this court. They are merely persuasive authority. This court is not persuaded that People v Maresca was correctly decided and therefore declines to follow it.
There is a further rationale for declining to follow People v Maresca. The Appellate Term decided Maresca after the “merger,” in Bronx County, of Supreme Court and Criminal Court into the Criminal Division of the Supreme Court in 2004. In the creation of the merger, the Chief Administrative Judge placed, by administrative order, judicial review of Supreme Court decisions in the Appellate Term.
On September 8, 2004, Chief Judge Judith Kaye promulgated 22 NYCRR part 42, authorizing the Chief Administrative Judge to create the Criminal Division of the Supreme Court in Bronx County transferring all criminal cases that included a misdemeanor or felony count to the Supreme Court.
Shortly after part 42 was promulgated, the then-Chief Administrative Judge of the Courts, Judge Jonathan Lippman, promulgated 22 NYCRR part 142 establishing the Criminal Division of the Supreme Court. This commenced the transfer of misdemeanors in Bronx County to a Criminal Division of the Supreme Court to be presided over by Supreme Court Justices.
In section 142.3, the Chief Administrative Judge addressed the procedure for appeals with respect to criminal matters in Bronx County, “An appeal taken from the trial court in such a case shall be taken to the same intermediate appellate court to which such appeal would have been taken had the case not been transferred hereunder.” (See Rules of Chief Admin of Cts [22 NYCRR] § 142.3.)
The effect of this promulgation is that misdemeanor cases decided by Supreme Court Justices were reviewable by other Supreme Court Justices sitting in the Appellate Term simply because they were misdemeanor cases. This transfer of appellate jurisdiction violates the express terms of CPL 450.60 and exceeds the scope of the authority of the Chief Administrative Judge.
*740 Section 450.60 of the Criminal Procedure Law mandates that an appeal from an order of the Supreme Court be heard in the Appellate Division. This section states that “[a]n appeal from a judgment, sentence or order of the supreme court must be taken to the appellate division of the department in which such judgment, sentence or order was entered.” (CPL 450.60 [1] [emphasis added].)
Under the doctrine of stare decisis, a court is bound by the judicial construction of a statute rendered by the court to which an appeal from that court lies. (See McKinney’s Cons Laws of NY, Book 1, Statutes § 72; see also 81 Franklin Co. v Ginaccini, 149 Misc 2d 124 [Civ Ct, NY County 1990].)
The Criminal Procedure Law directs that appeals from the Supreme Court be heard in the Appellate Division rather than the Appellate Term. It is not clear by what authority the Chief Administrative Judge was given the power to negate a statutory provision and strip the Appellate Division of the power of judicial review of orders of the Supreme Court and confer it upon the Appellate Term.
The office of the Chief Administrative Judge was established to supervise the administration of the statewide court system. In effect, to act as the chief operating officer of the Office of Court Administration. The Chief Administrative Judge is as bound by statutes passed by the legislature as any other member of the judiciary.
The Chief Administrator derives his or her power from appointment of the Chief Judge of the Court of Appeals as set forth in New York Constitution, article VI, § 28 and 22 NYCRR 80.1. The powers and duties delegated to the Chief Administrator, are, in pertinent part, to: adopt administrative rules for the efficient and orderly transaction of business in the trial courts, including but not limited to calendar practice, in consultation with the Administrative Board of the Courts or the appropriate Appellate Divisions. (22 NYCRR 80.1 [b] [6].)
The result of the instant order, 22 NYCRR 142.3, however, is to confer authority on the Appellate Term that otherwise belongs to the Appellate Division, or, in other words, confer upon one set of Supreme Court Justices the right to judicially review their coordinate Justices.
In Levenson v Lippman (4 NY3d 280 [2005]), the Court of Appeals held that the Chief Administrative Judge properly conferred power on an administrative judge to review a trial *741 court’s excessive compensation of awards to assigned counsel. In so holding, the Court of Appeals held that the act of awarding compensation is considered an “administrative act not subject to judicial review” and, since these were administrative, the Chief Administrative Judge’s order “does not confer upon an administrative judge any authority that would otherwise belong to the appellate courts.” (See Levenson, 4 NY3d at 288-289; see also Bliven v Hunt, 478 F Supp 2d 332, 338 [ED NY 2007].)
The review of findings of fact and conclusions of law is certainly different from the “administrative act” considered by the Court in Levenson. The judgments and orders of a Justice of the Supreme Court are not subject to review by the Supreme Court Justices sitting in the Appellate Term. The transfer of this power of judicial review to a coordinate authority is not authorized by law.
A litigant’s right to appeal is an important procedural and substantive right. The Chief Administrative Judge has no more authority to usurp and redistribute the right constitutionally and statutorily bestowed upon appellants to have an order of the Supreme Court judicially reviewed by five-Justice panels of the Appellate Division rather than three-Justice panels of the Appellate Term than he has to change, by order, CPL 270.25 (2) (b) to read that the parties must have 10 peremptory challenges in all felony cases because 10 challenges might speed up trials; or to modify section 260.30 of the Criminal Procedure Law to establish in New York State the order of summations in federal criminal trials, i.e., prosecutor, then defense, then prosecution rebuttal; or to modify section 270.05 of the Criminal Procedure Law to provide for trial juries of 6 jurors instead of 12; or to change New York Constitution, article VI, § 4 to divide the State into three judicial districts instead of four.
Since this is an invalid and unconstitutional transfer of judicial review, the Appellate Term’s decision in Maresca is not binding on this court and for this additional reason, this court declines to follow it.
For the reasons set forth above, the motion to dismiss is granted.